UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| PETESKI PRODUCTIONS, INC., | § § § | |
| Plaintiff, | § § | Civil Action No. _____ |
| v. | § § | |
| GAWKER MEDIA, LLC, | § § | JURY DEMANDED |
| Defendant. | § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Plaintiff Peteski Productions, Inc. ("Peteski" or "Plaintiff") brings this Original Complaint against Gawker Media, LLC ("Gawker" or "Defendant") as follows:

### PARTIES

1.      Peteski is a corporation organized under the laws of the State of Texas. It owns the copyright to a syndicated television program known as the Dr. Phil Show.

2.      Gawker is a limited liability company organized under the laws of the State of Delaware. It owns among others, a website known as "Deadspin.com" ("Deadspin").

### JURISDICTION AND VENUE

3.      This Court is vested with subject matter jurisdiction pursuant to 17 U.S.C. § 101 et seq. and 28 U.S.C. §§ 1331 and 1338.

4.      Defendant is subject to this Court's specific and general personal jurisdiction, due, at least, to its substantial business in this forum, including: (i) some of Defendant's acts of infringement complained of herein occurred in Texas and in this District; and/or (ii) Defendant

regularly does or solicits business, engages in other persistent courses of conduct, and/or derives

substantial revenue from goods and services provided to individuals in Texas and in this District.

Among other things, Gawker claims that individuals in the Eastern District of Texas who "SIGN

IN" to Deadspin agree to Gawker's Terms of Service and Privacy Policy.

5.      Venue is proper in this District Court under 28 U.S.C. § 1400(a), in that

Defendant is a limited liability company that may be found in this judicial district for purposes of

venue.  Defendant has entered into agreements within this judicial district or has engaged in

copyright infringement causing damages within this judicial district.

6.      Venue is also proper in this District Court under 28 U.S.C. § 1391(b) and (c).

Defendant is a limited liability company that resides in this District because Defendant is subject

to personal jurisdiction in this district at the time this action is commenced; and this is a District

in which a substantial part of the events or omissions giving rise to the claims occurred.

## INTRODUCTION

7.      Gawker describes itself as an "influential media group ... with a collective

audience of tens of millions of US readers."  It says that it has been heralded as "the biggest blog

in the world" and has "31 million monthly readers."  A minimum advertising spend with Gawker

is $25,000 and it boasts advertisers such as Austin Mini Cooper, Pepsi Max, HSBC Bank, Evian,

Microsoft, Verizon and "50 of the top 100 brands in the world."

8.      One of Gawker's properties is Deadspin which is claimed to be "the world's most

visited sports blog."  Deadspin represents that its demographics are younger and more affluent

than readers and viewers of ESPN, Yahoo!Sports, Esquire, Fanhouse and The Sporting News.  It

was said to have attracted, as of 2010, over 462 million unique visitors and about 573 million

page views. Deadspin's motto is: "Sports News Without Access, Favor or Discretion."  The last

part is certainly true: Deadspin and Gawker are serial copyright infringers. Indeed, one of Deadspin's advertised features is "Wake Up Deadspin" which results from Deadspin's "comb (of) the best blogs and broadsheets for sports news to start the day."

9.      This is a copyright infringement action which results from Deadspin's copying of two episodes of the Dr. Phil Show which aired on Thursday, January 31 and Friday, February 1, 2013 that contained an exclusive interview with Ronaiah Tuiasosopo ("Tuiasosopo") who had perpetrated a hoax on Notre Dame football star Manti Te'o by creating a fictitious girlfriend for the Heisman Trophy runner-up. During the first episode of the Dr. Phil Show, Tuiasosopo described how the fraud worked, but when challenged by Dr. Phil to recreate the telephone voice he used to fool Te'o, he demurred. The first show ended with the possibility that Tuiasosopo might "do the voice" the following day. The Deadspin blog encouraged its readers to "tune in tomorrow!" for the result of the "CLIFFHANGER"!

10.     In a premeditated plan to steal Peteski's copyrighted material, Deadspin posted the video of the second show to the Deadspin blog not later than 9:30 am Eastern Standard Time, hours before the Dr. Phil Show aired to over 98% of its viewers. By "tuning in" Deadspin apparently meant for viewers interested in the Tuiasosopo interview to "tune in" to Deadspin instead of Dr. Phil. Although the second show was expected to exceed the ratings number of the first show, in fact, the ratings declined substantially because the result of the "CLIFFHANGER" was no longer in doubt. It had been misappropriated by Deadspin.

11.     This was not Deadspin's first copyright infringement regarding the Te'o story. In January of 2013, it published a lengthy article regarding the hoax and imbedded in the story a three minute news broadcast from CBS This Morning. A month later, the three minute broadcast was removed in favor of a shorter clip with a note that said: "CBS This Morning video edited at

request of CBS." The "request" was a demand to cease and desist using CBS' copyrighted material.

12.     When it comes to their own copyright material, Gawker and Deadspin take a stricter approach. A Legal Notice on their website warns that: "Requests to use copyrighted and trademarked content ... may be subject to a fee." As for "Exclusives", Deadspin's policy of using the phrase is articulated by its editor, A.J. Daulerio, as being appropriate only when there are "unique circumstances wherein we feel it's necessary to inform dumb readers that the story they are reading on this site *was generated here and only here despite our dubious reputation as content remoras."* A remora is a fish, sometimes called a suckerfish, which attaches itself to other fish like sharks. The host fish gains nothing from the relationship but the remora is enriched by obtaining benefits (usually food and transportation) from the host. The interview with Tuiasosopo including, importantly, the second show exposing the "CLIFFHANGER"!!, was "exclusive" to Peteski. Gawker received substantial benefits from its infringement but Peteski received nothing that is, unless its damages are compensated in this lawsuit.

<u>CLAIM FOR RELIEF</u>
<u>(For Copyright Infringement)</u>

13.     Peteski incorporates and realleges herein by reference paragraphs 1 through 12, inclusive, as though set forth in full herein.

14.     The <u>Dr. Phil Show</u> ("DPS"), hosted by Dr. Phil McGraw ("McGraw"), is the No. 1 rated daytime television broadcast. The <u>DPS</u> is in syndication throughout the United States and a number of other countries. Peteski is the owner of the copyrights in the <u>DPS</u>.

15.     After days of extensive pre-interview research, work and meetings with associated parties such as psychiatrists and attorneys representing the subject, on January 25, 2013, McGraw landed an exclusive interview with Tuiasosopo, the man who duped Manti Te'o,

the former Notre Dame linebacker and Heisman Trophy finalist. Tuiasosopo, while pretending to be a woman by the name of Lennay Kekua, had engaged in a two-year, long-distance online and telephone relationship with Te'o. Te'o claimed he fell in love with Kekua despite having never met her in person.

16.     Numerous media organizations and individuals were, like Peteski, vying to obtain the first, exclusive Tuiasosopo interview. During the week of January 21, 2013, the front lawn of Tuiasosopo's home was crowded with reporters attempting to speak with him. Tuiasosopo ultimately agreed that McGraw would conduct the exclusive and first interview. After escaping his own house through his backyard, Tuiasosopo and his family traveled to McGraw's home in Los Angeles, California. With the hard efforts of dozens of production personnel, McGraw's interview of Tuiasosopo was filmed on January 25, 28 and 29, 2013. Thereafter, it was announced that the Tuiasosopo-McGraw interview would be aired on the DPS in two episodes, on January 31 and February 1, 2013. Tuiasosopo agreed to a complete media blackout for a period of time beginning the first day the interview process began until well after it was scheduled to air in order to protect the exclusivity of the content.

17.     The DPS episode that aired on January 31, 2013 is entitled "Exclusive: The Man Behind the Manti Te'o Girlfriend Hoax Speaks Out, Part 1" ("Episode 1"). The DPS episode that aired on February 1, 2013 is entitled "Exclusive: The Man Behind the Manti Te'o Girlfriend Hoax Speaks Out, Part 2" ("Episode 2").

18.     Peteski is the owner and holder of the exclusive copyright in and to Episode 1 and Episode 2 (the Episodes") and has the exclusive right, under Section 106 of the Copyright Act, to reproduce the Episodes, and license to third parties the right to exhibit the Episodes. Attached hereto as Exhibit "A" is a true and correct copy the Certificate of Registration for

Episode 1.   Attached hereto as Exhibit "B" is a true and correct copy the Certificate of Registration for Episode 2.

19.     The Episodes are works containing material wholly original with Peteski and are copyrightable subject matter under the copyright laws of the United States.

20.     On January 30, 2013, Deadspin.com ("Deadspin"), a website owned and operated by Defendant, announced the much-anticipated airing of the Tuiasosopo interview: "On Thursday, the first half of Dr. Phil's exclusive interview with Ronaiah Tuiasosopo will air in its entirety." (See attached Exhibit "C").

21.     The next morning, Deadspin wrote: "Part one of Ronaiah Tuiasosopo's silence-breaking sit-down with Dr. Phil airs all over the nation today. (Check your local listings for the precise time.)." (See attached Exhibit "D").

22.     In the early afternoon of January 31, Deadspin recapped portions of Episode 1, and concluded:

> At first, Tuiasosopo told Dr. Phil that he couldn't do the voice—he was too embarrassed. But Dr. Phil pressed him.  He even gave Tuiasosopo a privacy screen.  Tuiasosopo prepared to perform.  And then: CLIFFHANGER. Dr. Phil is a TV wizard.  Tune in tomorrow!

(See attached Exhibit "E").

23.     By its infringing actions, however, the CLIFFHANGER was anything but.  In a premeditated plan to steal Peteski's hard earned copyrighted content, Gawker obtained a copy of Episode 2 and, with reckless disregard for Peteski's legal rights, imbedded a video of Episode 2 in the blog and headlined it onto their website. Gawker deliberately set out to get "the jump" on the rest of the country and "scoop" Dr. Phil with his own content.  They did not earn that right,

they stole it.  They did not conduct the interview, they stole it.  They did not ask permission, they blatantly and knowingly infringed the copyright of the content owner and did so in a way that furthered their interest to the maximum and undercut the rightful owner of the protected material.

24.      On February 1, 2013, in the early morning hours, Gawker posted unauthorized audio-video excerpts of the heart of Episode 2 on Deadspin.  (See attached Exhibits "F" & "G").  As a result of Defendant's disregard of Peteski's copyright rights, Gawker infringed the CLIFFHANGER on February 1, 2013.  Indeed, Gawker's theft of the core of Episode 2 gave those viewers no reason to "tune in" to watch that episode.

25.      Gawker infringed Peteski's copyrights in Episode 2 by publishing and distributing copies of portions of Episode 2 without permission and disseminating them to the public via the Internet.

26.      Gawker continues to infringe Peteski's copyrights in Episode 2 by publishing and distributing copies of portions of Episode 2 without permission and disseminating them to the public via the Internet.

27.      Gawker's infringement is willful.

28.      By reason of the foregoing acts of copyright infringement by Defendant, Peteski has sustained damages in an amount presently unknown but to be determined at trial.

### PRAYER FOR RELIEF

Plaintiff Peteski Productions, Inc. prays for the following relief:

1.      for actual damages and disgorgement of profits, or statutory damages and/or enhanced statutory damages for Defendant's willful actions, in an amount according to proof at the time of trial;

2.      for preliminary or permanent injunctive relief;

3.      for punitive damages;

4.      for costs of suit herein;

5.      for attorneys' fees pursuant to 17 U.S.C. § 505; and

6.      for such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action on all issues triable by jury.

Respectfully submitted,

/s/ Charles L. Babcock
Charles L. "Chip" Babcock, Lead Attorney
Texas State Bar No. 01479500
Nancy W. Hamilton
Texas State Bar No. 11587925
Carl C. Butzer
Texas State Bar No. 03545900
JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas  75202
(214) 953-6000
(214) 953-5822 - Fax
Email: cbabcock@jw.com

George L. McWilliams
Texas State Bar No. 13877000
Law Office of George L. McWilliams, P.C.
Post Office Box 58
Texarkana, Texas-Arkansas 75504
(870) 772-2055
(870) 772-0513 – Fax
Email: glmlawoffice@gmail.com

ATTORNEYS FOR PLAINTIFF
PETESKI PRODUCTIONS, INC.